Daniel G. Martinez
8116 Mountain Forest Court
Las Vegas, NV 89129
(702) 274 0416

Ramona Hage Morrison
7600 Desert Vista Drive
Sparks, NV 89436
(775)722 2517

Dalton Warren Wilson
P.O. Box 74
Austin, NV 89310
(775) 964 1484

UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GABINO MARTINEZ an Individual<br>RAMONA HAGE MORRISON an Individual<br>DALTON WARREN WILSON an Individual<br><br>Plaintiff(s).<br><br>-vs-<br><br>THE UNITED STATES, its AGENCIES,<br>OFFICERS and EMPLOYEES<br><br>Defendant | CASE NO. 3:13-cv-00554-MMD-VPC<br><br>Related Cases: 2:07-cv-01154-RCJ-VCF; 91-1470L; 11-751L; 3:09-cv-00166; 3:07-cr-00030-BES-RAM<br><br>**AMENDED MOTION FOR NOTICE AND ORDER TO SHOW CAUSE UNDER FEDERAL RULES OF CRIMINAL PROCEDURE RULE 42 (a)(1)(2)(3)** |

COMES NOW Daniel Gabino Martinez, Ramona Hage Morrison and Dalton Warren Wilson, appearing pro se, to motion this Honorable Court pursuant to Federal Rules of Criminal Procedure Rule 42(a)(1)(2)(3) for Acts described under Title 18 Chapter 21 § § 371, 401 , 402 and 18 U.S.C. § § 241, 1031, 1622, 1621 and 1623, for an order to show cause to Greg Addington, Assistant United States Attorney for the District of Nevada and to Leon Thomas

Field Manager of the Sierra Front Field Office of the Bureau of Land Management, United States Department of Interior both of oath and affirmation to appear at a show cause hearing to show cause why they should not be formally charged for misbehavior in the presence of or so near thereto as to obstruct the administration of Justice; misbehavior of its officers in their official transaction; and resistance to the courts lawful rules and process. Plaintiffs/Complainants incorporate the full record in reference thereto, both oral and written. See **EXHIBIT "ONE" AMENDED** VERIFIED CRIMINAL COMPLAINT with attachments.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

Because this Motion is for criminal contempt, the notice and order shall provide for all the substantive and procedural Due Process protections afforded those accused of a crime. "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). These constitutional protections include the right **(1)** not to be subject to double jeopardy, *see United States v. Dixon*, 509 U.S. 688, 695 (1993); *In re Bradley*, 318 U.S. 50 (1943); **(2)** to receive notice of the charges, **(3)** to receive assistance of counsel; **(4)** to receive summary process; **(5)** to present a defense, *Cooke v. United States*, 267 U.S. 515, 537 (1925); **(6)** not to self-incriminate oneself, and **(7)** to proof beyond a reasonable doubt, *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911). For serious criminal contempts involving imprisonment of more than six months, these protections include the right to a jury trial. *Bloom*, 391 U.S. at 199.[1]

Contempt of court is an act of disobedience or disrespect towards the judicial branch of the government, or an interference with its orderly process. It is an offense against a court of justice or a person to whom the judicial functions of the sovereignty have been delegated. The power of

or subjected to an unconditional fine. *See Penfield Co. v. SEC*, 330 U.S. 585, 595 (1947); *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, 441-42 (1911); *Duell v. Duell*, 178 F.2d 683, 685 (D.C.Cir. 1949); *Parker v. United States*, 153 F.2d 66, 70 (1st Cir. 1946). An unconditional award or fine may, however, be imposed in a compensatory civil contempt action. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947); *Backo v. Local 281, United Brothers of Carpenters and Joiners*, 438 F.2d 176, 182 (2d Cir. 1970), *cert. denied*, 404 U.S. 858 (1971).[6]

When Characteristics of both civil and criminal contempt are present the criminal contempt is dominant and the order should reflect that it is criminal for purposes of review. When a contempt action is not clearly specified as criminal or civil and a single order is entered granting both punitive and remedial relief, the criminal feature of the order is dominant and fixes its character for purposes of review. *See Penfield Co. v. SEC*, 330 U.S. 585, 591 (1947); *Union Tool Co. v. Wilson*, 259 U.S. 107, 110 (1922); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).[7]

This Motion is for an order of direct criminal contempt in that the contempt was done directly in the Court. (See Criminal Complaint Exhibit "One")A contempt is indirect when it occurs out of the presence of the court, thereby requiring the court to rely on the testimony of third parties for proof of the offense. It is direct when it occurs under the court's own eye and within its own hearing. *See Matter of Heathcock*, 696 F.2d 1362, 1365 (11th Cir. 1983); *United States v. Peterson*, 456 F.2d 1135, 1139 (10th Cir. 1972). The requirement that direct contempt be committed in the presence of the court does not limit direct contempts to those which take place in the courtroom, but some degree of formality usually found in the courtroom setting must

[5] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 756
[6] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 757

accompany an exercise of the judicial function for the proceedings to be in the actual presence of the court. *Matter of Jaffree*, 741 F.2d 133 (7th Cir. 1984). Direct contempt for conduct in the court's presence may be punished summarily. *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902 (5th Cir. 1995).[8]

The necessity of prior notice of direct criminal contempt is not necessary as Greg Addington is highly trained in the law and is employed by the Department of Justice in the enforcement of laws that protect the interests of his employer and Leon Thomas in his position has access to Counsel from the Solicitor's office and the Solicitor's office may have been involved in the March 14, 2014 letter that gave rise to this action. When the defendant's conduct is clearly contemptuous, *United States v. Schiffer*, 351 F.2d 91 (6th Cir. 1965), *cert. denied*, 384 U.S. 1003 (1966), or when he is aware of the character of his conduct, *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972), the court need not warn the defendant of the fact that his conduct is contemptuous prior to summarily holding him in criminal contempt although such a warning may be appropriate. *United States v. Abascal*, 509 F.2d 752, 755 (9th Cir.), *cert. denied*, 422 U.S. 1027 (1975).[9]

Plaintiffs/Complainants have made reference to the Record specifically Document 28 and the Court transcripts in their criminal complaint (See Exhibit "One") and as such the judge is not required to certify that he heard or saw the alleged conduct that constitutes the direct contempt.

Under Rule 42(a) of the Federal Rules of Criminal Procedure, the judge in a summary criminal contempt action must certify that "the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record." The conduct described in the

---

[7] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 758

[8] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 759

certificate must in itself constitute contempt. *See Hallinan v. United States*, 182 F.2d 880 (9th Cir. 1950), *cert. denied*, 341 U.S. 952 (1951). This is because "the function of the certificate is not to give notice to the defendant or to frame an issue to be tried, but solely to permit an appellate court to review the judge's action." *In re Williams*, 509 F.2d 949 (2d Cir. 1975); *United States v. Schrismsher*, 493 F.2d 842 (5th Cir. 1974); *United States v. Marshall*, 451 F.2d 372, 377 (9th Cir. 1971). The certificate must recite the specific factual findings upon which the charges are based. Conclusory allegations are not sufficient. *In re Williams*, 509 F.2d 949; *Schrismsher*, 493 F.2d 842. The certificate does not meet the requirements of Rule 42(a) if it incorporates the entire trial transcript by general reference, rather than recite specific facts. *In re Williams*, 509 F.2d 948; *United States v. Marshall*, 451 F.2d 372. A judge's failure to make the required certificate does not necessarily call for reversal of the contempt conviction. A remand of the cause to permit an opportunity for the necessary certificate may be a sufficient remedy. *See United States v. Mars*, 551 F.2d 711, *affirmed after remand*, 553 F.2d 508 (6th Cir. 1977).[10]

Even though the Court has broad discretion in its sentencing, it is the Due Process violations, both substantive and procedural violations that are the most concern to the Plaintiffs/Complainants. The zeal of the contemptuous actors is to create presumptions without evidence that is causing Plaintiffs/Complainants prejudice in the Court's administration of justice. Courts have broad discretion in setting the appropriate fine or imprisonment following a criminal contempt proceeding. *See frank v. United states*, 395 U.S. 147, 149 (1969); *United States v. United mine workers of America*, 330 U.S. 258, 303; *United states v. Ray*, 683 f.2d 1116 (6th Cir. 1982), *cert. denied*, 459 U.S. 1091 (1983); *United states v. Greyhound corp.*, 508 F.2d 529, 541 (7th Cir. 1974); *Moore v. United states*, 150 f.2d 323, 325 (10th Cir. 1945), *cert.*

---

[9] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 781
[10] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 783

*denied*, 326 U.S. 740 (1945); *Brooks v. United states*, 119 f.2d 636, 646 (9th Cir.), *cert. denied*, 313 U.S. 594 (1941). However, the sentence imposed in a criminal contempt is subject to appellate review and modification. *Green v. United states*, 356 U.S. 165 (1958); *United States v. Bukowski*, 435 f.2d 1094 (7th Cir.), *cert. denied*, 401 U.S. 911 (1971).

When a contemnor is to be summarily held in criminal contempt at the end of trial, the person should be given "an opportunity to speak in his own behalf in the nature of right of allocution." *Groppi v. Leslie*, 404 U.S. 496, 504 (1972); *see Taylor v. Hayes*, 418 U.S. 488, 498 (1974); *Weiss v. Burr*, 484 F.2d 973 (9th Cir. 1973).[11]

PRESUMPTIONS VIOLATE DUE PROCESS

Defendants are attempting to violate the rights of Plaintiffs/Complainants by creating presumptions in oral and written testimony that are violating the rights of Plaintiffs/Complainants and are obstructing the Courts administration of justice.

> **presumption.** An inference in favor of a particular fact. A presumption is a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted. Van Wart v. Cook, Okl. .App., 557 P.2d 1161, 1163. A legal device which operates in the absence of other proof to require that certain inferences be drawn from the available evidence. Port Terminal & Warehousing Co. v. John S. James Co., D.C.Ga., 92 F.R.D. 100, 106.
>
> A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence. A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof. Calif.Evid.Code, §600.
>
> In all civil actions and proceedings not otherwise provided for by Act of Congress or by the Federal Rules of Evidence, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of

[11] United States Attorney's Manual 9-39.000 Criminal Resource Manual at 789

> proof in the sense of the risk of none persuasion, which remains throughout the trial upon the party on whom it was originally cast. Federal Evidence Rule 301.
>
> *See also* Disputable presumption; inference; Juris et de jure; Presumptive evidence; Prima facie; Raise a presumption. Black's Law Dictionary 6th Edition page 1185
>
> **Due process of law**. Law in its regular course of administration through courts of justice. Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. **A course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the enforcement and protection of private rights.** To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of the creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, **he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance**. Pennoyer v. Neff, 96 U.S. 733, 24 L.Ed. 565. Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. **If any question of fact or liability be conclusively presumed [rather than proven] against him, this is not due process of law.** [emphasis added] Black's Law Dictionary 6th Edition page 500

(1) [8:4993] **Conclusive presumptions affecting protected interests:** A conclusive presumption may be defeated where its application would impair a party's constitutionally-protected liberty or property interests. In such cases, conclusive presumptions have been held to violate a party's due process and equal protection rights. [*Vlandis v. Kline* (1973) 412 U.S. 441, 449, 93 S.Ct 2230, 2235; *Cleveland Bed. of Ed. v. LaFleur* (1974) 414 US 632, 639-640, 94 S.Ct. 1208, 1215-presumption under Illinois law that unmarried fathers are unfit violates process][12]

Presumptive statements such as Plaintiffs/Complainants' used the wrong forms or that Plaintiffs' predecessors had a land based permit, or that Plaintiffs/Complainants' pre- existing rights that are recognized by Congress in all the public land laws are subject to their

administrative regulations. Presumptive statements that Plaintiffs/Complainants' complaint does not encompass the provisions of the Administrative Procedures Act at 5 U.S.C. § § 702 and 706 and should be dismissed are violating Plaintiffs/Complainants' due process rights and the Taylor Grazing Act of 1934 and the Roosevelt withdrawal by Executive Order 6910 all recognize these rights that pre- existed. Just because the executive agency has a policy that is in conflict with the Act of Congress does not mean that Plaintiffs/Complainants do not have rights. The Supreme Court decided this issue in *Western and Atlantic Railroad v. Henderson*, 279 U.S. 639 (1929):

**Legislation declaring that proof of one fact of group of facts shall constitute prima facie evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment.** Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property. *Manley v. Georgia*, 279 U.S. 1 , 49 S. Ct. 215, 73 L. Ed. -, and cases cited.

The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis [279 U.S. 639, 643] for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of any one. Reasoning does not lead from the occurrence back to its cause. And the presumption was used to support conflicting allegations of negligence. Plaintiff claimed that the engineer failed to keep a lookout ahead, that he did not stop the train after he saw the truck on

[12] Rutter Group Practice Guide-Federal Civil Trials and Evidence, paragraph 8:493, page 8K-34

the crossing, and that his eyesight was so bad that he could not see the truck in time to stop the train.

Appellee relies principally upon *Mobile, J. & K. C. R. R. v. Turnipseed*, 219 U.S. 35 , 31 S. Ct. 136, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. That was an action in a court of Mississippi to recover damages for the death of a section foreman accidentally killed in that state. While engaged about his work he stood by the track to let a train pass; a derailment occurred and a car fell upon him. A statute of the state provided: '... Proof of injury inflicted by the running of the locomotives or cars of such (railroad) company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury.' That provision was assailed as arbitrary and in violation of the due process clause of the Fourteenth Amendment. This court held it valid and said (page 43 of 219 U. S. (31 S. Ct. 138)). 'The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at end, and the question of negligence is one for the jury upon all of the evidence. ... The statute does not ... fail in due process of law, because it creates a presumption of liability, since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference.' That case is essentially different from this one. Each of the state enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute cre- [279 U.S. 639, 644] ated merely a temporary inference of fact that vanished upon the introduction of opposing evidence. *Gulf, M. & N. R. Co. v. Brown*, 138 Miss. 39, 66, 102 So. 855 et seq.; *Columbus & G. Ry. Co. v. Fondren*, 145 Miss. 679, 110 So. 365. That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate.

The presumption raised by section 2780 is unreasonable and arbitrary, and violates the due process clause of the Fourteenth Amendment. *Manley v. Georgia*, supra; *McFarland v. American Sugar Co.*, 241 U.S. 79 , 36 S. Ct. 498; *Bailey v. Alabama*, 219 U.S. 219 , 31 S. Ct. 145. [emphasis added]

CONCLUSION

To preserve the integrity of our courts and to preserve the administration of justice, the Court must grant this motion and enforce the criminal statutes that Congress passed to protect the Court. This Court has jurisdiction under the inherent powers granted to it under the Constitution and if citizens lose faith in the administration of justice, there is no justice and our system of Government that is in balance (peaceful and harmonious) would be out of balance and would encourage civil unrest. The United States Postal Service under its delegated authority at 39 U.S.C. § 404 has an independent authority to investigate and to prosecute. Consider this Amended Notice and Motion as a proper response to Minutes of Proceedings of the March 27, 2014 hearing in which The Honorable Valerie P. Cooke U.S. Magistrate Judge encourages Plaintiffs to review the March 14, 2014 letter from BLM and to advise Mr. Addington on how Plaintiffs intend to proceed no later than Monday April 28, 2014. This in itself is evidence of the obstruction of the administration of the Court that is the subject of the Contemptuous behavior complained about in the Amended Criminal Complaint (Exhibit "ONE" with attachments)

Dated: May 7, 2014

By: Ramona Hage Morrison

Ramona Hage Morrison

Daniel Gabino Martinez

Daniel Gabino Martinez

Dalton Warren Wilson

Dalton Warren Wilson

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing AMENDED MOTION FOR NOTICE AND ORDER TO SHOW CAUSE UNDER FEDERAL RULE OF CRIMINAL PROCEDURE RULE 42(a)(1)(2)(3 )was made through the United States Postal Service by depositing the package in a United States Postal Box in Reno, Nevada addressed to the following on May____2014.

DANIEL G. BOGDEN United States Attorney
Greg Addington Assistant United States Attorney
100 West Liberty Suite 600
Reno, NV 89501

Patrick R. Donahoe
Post Master General
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260-0010

Bishar Abdirahman Hussein
Director General
Universal Postal Union
International Bureau
Case Postale 312
3015 Berne, Switzerland
Telephone 41-31 350 3111
Fax 41 31 350 3110

Executive Office for United States Attorneys
United States Department of Justice
950 Pennsylvania Ave NW Room 2242
Washington, DC 20530-0001

United States Department of the Interior
Office of the Solicitor
Hilary Tomkins
1849 C Street NW
Washington, DC 20240

Office of the Inspector General
950 Pennsylvania Avenue, N.W.
Suite 4706
Washington, D.C. 20530-0001
(202) 514-3435

Courtesy Copy:

Chief Judge Gloria M. Navarro
U.S. District Court
District of Nevada
333 Las Vegas Blvd South
Las Vegas, Nevada 89101

Judge Robert C. Jones
400 S. Virginia Street
Reno, Nevada 89501

Daniel Gabino Martinez
/

# EXHIBIT "ONE"

**Verified Complaint**

Daniel G. Martinez
8116 Mountain Forest Court
Las Vegas, NV 89129
(702) 274 0416

Ramona Hage Morrison
7600 Desert Vista Drive
Sparks, NV 89436
(775)722 2517

Dalton Warren Wilson
P.O. Box 74
Austin, NV 89310
(775) 964 1484

UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GABINO MARTINEZ an Individual<br>RAMONA HAGE MORRISON an Individual<br>DALTON WARREN WILSON an Individual<br><br>Plaintiff(s).<br><br>-vs-<br><br>THE UNITED STATES, its AGENCIES, OFFICERS and EMPLOYEES<br><br>Defendant | CASE NO. 3:13-cv-00554-MMD-VPC<br><br>Related Cases: 2:07-cv-01154-RCJ-VCF; 91-1470L; 11-751L; 3:09-cv-00166; 3:07-cr-00030-BES-RAM<br><br>**AMENDED INFORMATION: 18 U.S.C. §§ 371,401,402,1031,241,1621,1622, 1623; Criminal Conspiracy to Deprive Citizen of Constitutional Rights; Perjury, Subornation of Perjury, Fraud, and Contempt of Court** |
| DANIEL GABINO MARTINEZ<br>RAMONA HAGE MORRISON<br>DALTON WARREN WILSON<br>Citizen Complainants<br><br>-vs-<br><br>GREGORY ADDINGTON<br>LEON THOMAS<br>Defendants | |

THE COMPAINT ABOVE NAMED CHARGES THAT:

1. COUNT ONE

1.1 On or about January 24, 2014 Plaintiffs and Defendant United States *et al.* submitted a joint status report pursuant to Fed. Rules of Civil Procedure Rule 16 and Local Rule 16-2 and a hearing was conducted on January 31, 2014, in which Assistant United States Attorney testified in court that as of that morning his client had assured him that there would be an offer within 2 weeks submitted. In addition Assistant United States Attorney testified as to facts of which evidence was not before the Court in an attempt to mislead and influence the Court by creating presumptions that obstructed the administration of justice and prejudiced Plaintiffs. As one highly trained in the law and procedure, this tactic was a willful disregard to the rights of the Plaintiffs. Willfulness being an essential element of the crime alleged, the Defendants and each of them conspired together to fabricate said element in order to deny Complainants their procedural due process rights to Judicial Review of Agency Action or Inaction and to mislead the Court.

1.2 These acts of Defendants constitutes violations of 18 U.S.C. §§ 371, 241, 1031, 1621, and 1623. These false and perjurious statements were done in the presence of the Court and constitutes a willful obstruction of the administration of justice pursuant to 18 U.S.C. §§ 401 and 402. This obstruction of Justice resulted in a stay of proceedings pending a submission of an offer.

II. COUNT TWO

2.1 On or about March 24, 2014 Defendants submitted a document titled UNITED STATES' CASE MANAGEMENT REPORT which Defendants each of them did willfully and

knowingly make false and perjurious statements which did not comply with the purpose of Federal Rule of Civil Procedure Rule 16 and Local Rule 16-2 and influenced the Court as to obstruct the administrative of justice and to deny Plaintiffs/Complainants rights of judicial review , the right of discovery and rights to property and the rights under the Administrative Procedures Act. . While in the possession of voluminous evidence to the contrary, defendants each of them testified to facts that are contrary to evidence available in the United States Post Office Records and in the Administrative Record of the Bureau of Land Management.

2.2 On page 2 of United States Management Report Document 26 Defendant Greg Addington, makes and has prejudiced Plaintiffs/Complainants. These false statements by counsel for the Defendant numerous willful and misleading statements that have obstructed the administration of justice were made with no evidence in support and have influenced the Court and have obstructed justice as per 18 U.S.C. §§ 401 and 402. The willful conspiracy between Greg Addington and Leon Thomas has interfered with the free exercise, enjoyment and privilege secured to Plaintiffs/Complainants by the Constitution and the laws of the United States. This willful conspiracy of false and perjured statements has obstructed the administrative of justice. The claim Plaintiffs used the wrong forms are unsupported by the record, and the statement "Once a final decision is made by BLM of a completed application and any administrative remedies are exhausted, plaintiffs may seek appropriate judicial review of the final agency decision." , is misleading and is contrary to the clear wording of the law at 5 U.S.C. § 702 Right of Review. This willful misrepresentation of the law is an obstruction of justice, pursuant to 18 U.S.C. §§ 401 and 402 and is false and misleading pursuant to 18 U.S.C. §§ 1621 and 1623. This willful misrepresentation rises to the level of Fraud pursuant to 18 U.S.C. § 1031 and deprives Plaintiffs/Complainants, of rights secured to them pursuant to 18 U.S.C. § 241.

2.3 On page 2 of Document 26 in footnote 1 Greg Addington and Leon Thomas make false and misleading statements that are intended to obstruct the administration of justice. The March 14, 2014 letter Certified Mail # 7008-1300 0002 1197 2023 that Greg Addington and Leon Thomas claimed was mailed on March 14, 2014 and that was returned undeliverable (or refused) and was re-sent on March 19 to the Sparks address is in total conflict with the records of the United States Post office. The record clearly exposes the false statements made by counsel. This record is as follows:

https://tools.usps.com/go/TrackConfirmAction!input.action?tRef=qt&tLc=1&tLabels=70081300000211972023

| | | |
|---|---|---|
| March 20, 2014 , 11:45 am | Delivered | CARSON CITY, NV 89701 |
| March 20, 2014 , 1:41 am | Processed through USPS Sort Facility | RENO, NV 89510 |
| March 19, 2014 , 5:46 pm | Processed through USPS Sort Facility | RENO, NV 89510 |
| March 18, 2014 , 2:08 pm | **Undeliverable as Addressed** | SPARKS, NV 89436 |
| March 18, 2014 , 9:20 am | Out for Delivery | SPARKS, NV 89434 |
| March 18, 2014 , 9:10 am | Sorting Complete | SPARKS, NV 89434 |
| March 18, 2014 , 8:22 am | Arrival at Unit | SPARKS, NV 89434 |
| March 18, 2014 | Depart USPS Sort Facility | RENO, NV 89510 |
| March 17, 2014 , 11:53 pm | Processed through USPS Sort Facility | RENO, NV 89510 |

In addition the statement in the footnote at page 2 of document 26 that "….and also on March 20 to the Las Vegas address reflected on the notice #10 of the address change." , is totally in conflict with the United States Post Office records at :

https://tools.usps.com/go/TrackConfirmAction!input.action?tRef=qt&tLc=1&tLabels=70130600000115270432

Tracking Number: 70130600000115270432 delivered

Product & Tracking Information

Postal Product:

Features: Certified Mail™

March 28, 2014 , 12:54 pm Delivered LAS VEGAS, NV 89128

March 27, 2014 , 3:50 pm Notice Left (No Authorized Recipient Available) LAS VEGAS, NV 89129

March 25, 2014 Depart USPS Sort Facility RENO, NV 89510

March 24, 2014 , 10:28 pm Processed through USPS Sort Facility RENO, NV 89510

Available Actions

USPS Text Tracking™

The USPS records clearly shows that footnote 1 on page 2 of document 26 is in conflict with statements made by Greg Addington and by Leon Thomas. This willful misrepresentation of the facts has obstructed the administration of the Court pursuant to 18 U.S.C. §§ 401 and 402 and have deprived plaintiffs/Complainants of their Substantive and Procedural Due Process Rights under the Laws and have caused a damage pursuant to 18 U.S.C. §§ 241, 1031, 1621 and 1623.

III. <u>COUNT THREE</u>

3.1 On or about March 27, 2014 a Case Management Conference was held at 9:00 a.m. before Magistrate Judge Valerie Cooke. Greg Addington appeared in person and Daniel Gabino Martinez, Ramona Hage Morrison and Dalton Warren Wilson appeared telephonically. The

evidence of the obstruction of justice is reflected in the minutes of the hearing and in the Minutes of Proceedings in Document 28 in addition this evidence is evidenced in the oral testimony of Greg Addington. In the hearing the Court veered from normal practice and procedure to allow Defendants to go forth and present their case, the Defendants became the Plaintiffs and Plaintiffs had to defend themselves from the false and perjured testimony by Defendants. In Document 28 Minutes of Proceedings, the record is clear that there had been a successful obstruction of the administration of justice. The Court in the minutes is asking Plaintiffs/Complainants to aid and abet the obstruction of justice and to act outside the jurisdiction of the Court to the prejudice of Plaintiffs/Complainants. See Transcripts of the hearing on January 31, 2014 and on March 27, 2014 incorporated herein for reference thereto.

3.2 These willful acts of the Defendants Greg Addington and Leon Thomas constitute violations of 18 U.S.C. §§ 401 and 402 have obstructed the administration of justice and have violated the rights of Plaintiffs/Complainants constituting violations of 18 U.S.C. §§ 371, 241, 1031, 1621, 1622 and 1623. These willful acts appear to be a pattern and practice used to deprive Plaintiffs of the protections afforded by law and appears to be in concert with possibly other players.

IV. COUNT FOUR

4.1 On or about March 27, 2014 a Case Management Conference was held at 9:00 a.m. before Magistrate Judge Valerie Cooke. Greg Addington appeared in person and Daniel Gabino Martinez, Ramona Hage Morrison and Dalton Warren Wilson appeared telephonically. The evidence of the obstruction of justice is reflected in the minutes of the hearing and in the Minutes of Proceedings in Document 28 in addition this evidence is evidenced in the oral testimony of Greg Addington. In the hearing the Court veered from normal practice and procedure to allow

Defendants to go forth and present their case, the Defendants became the Plaintiffs and Plaintiffs had to defend themselves from the false and perjured testimony by Defendants' Counsel. Greg Addington testified that the BLM had mailed a letter to Martinez, Wilson and Morrison on March 19, 2014. Daniel Martinez telephonically testified that he had not received any mail from the BLM, he asked both Mr. Wilson and Mrs. Morrison if they had received any mail, and they both testified that they had not. Daniel Martinez was upset and demanded that Assistant U.S. Attorney send him the Certified Mail Numbers so that he could file a complaint with the United States Postal Service, Martinez further testified that he had never had a problem receiving mail from the Court or from the United States Department of Justice. The Magistrate Judge Valerie P. Cooke ordered Mr. Greg Addington to provide the certified mail numbers. See Doc. No. 28 # 3.

4.2 On or about March 27, 2014 Mr. Greg Addington sent a cover letter and a copy of the March 14, 2014 letter that was dated March 19, 2014 and marked received on March 20, 2014 by the U.S. Attorney, Reno, Nev. This letter had the Certified Mail # 701 0600 0001 1527 0425 with forms attached and was received by Daniel Martinez at his Las Vegas mailing location on March 29, 2014. This letter and envelope is attached herein as **EXHIBIT 'TWO'**

4.3 The testimony of Greg Addington in open Court on March 27, 2014 that the BLM sent the letter to Martinez, Wilson and Morrison and also in the March 27, 2014 cover letter to Daniel Martinez, is clearly false, deceptive and contemptuous as the Records from the United States Post Office clearly shows that it was mailed from a Reno Location and delivered to a Carson City, location. The postal record can be seen on line at:

https://tools.usps.com/go/TrackConfirmAction.action?tRef=fullpage&tLc=1&text28777=&tLabels=7013+0600+0001+1527+0425

Tracking Number: 70130600000115270425

**delivered**

**Product & Tracking Information**

**Postal Product:**

-

**Features:**

- Certified Mail™

| Date & Time | Status of Item | Location |
|---|---|---|
| **March 27, 2014 , 11:57 am** | **Delivered [emphasis added]** | **CARSON CITY, NV 89701** |
| March 26, 2014 , 11:25 am | Processed through USPS Sort Facility | SPARKS, NV 89434 |
| March 26, 2014 , 5:39 am | Processed through USPS Sort Facility | RENO, NV 89510 |
| March 25, 2014 , 4:51 pm | Processed through USPS Sort Facility | RENO, NV 89510 |
| March 20, 2014 , 8:49 am | Sorting Complete | SPARKS, NV 89434 |
| March 20, 2014 , 6:38 am | Arrival at Unit | SPARKS, NV 89434 |
| March 19, 2014 | Depart USPS Sort Facility | RENO, NV 89510 |
| March 19, 2014 , 9:27 pm | Processed through USPS Sort Facility | RENO, NV 89510 |

4.4 This clearly shows that it was mailed on March 19, 2014, but was never mailed to Martinez, Wilson and Morrison, but was mailed to Carson City, Nevada 89701 and was received at 11:57 am after the hearing on the 27th of March, 2014.This blatant disregard for the law and the Administration of Justice, shocks the conscience of Plaintiffs/Complainants to the point of losing confidence in the administration of justice in our Courts, the cornerstone of our orderly society. It makes Plaintiffs/Complainants wonder the nature of the "arbitrary, capricious behavior that is contrary to law" that is within the Administrative Record.

4.5 These willful acts of the Defendants Greg Addington and Leon Thomas constitute violations of 18 U.S.C. §§ 401 and 402 and have obstructed the administration of justice and have violated the rights of Plaintiffs/Complainants constituting violations of 18 U.S.C. §§ 371, 241, 1031, 1621, 1622 and 1623. These willful acts appear to be a pattern and practice used to deprive Plaintiffs of the protections afforded by law and appears to be in concert with possibly other players.

## V. COURT RECORD IN SUPPORT OF THIS COMPLAINT

5.1 The Court record in Documents 1-28 are incorporated herein as part of Complainants complaint in the Federal District Court in the above cited case at bar, as ample proof that the Complainants are not and never has been given Due Process and that Complainants have been prejudiced by the willful acts of Defendants. Complainants have been denied the provisions of the Administrative Procedures Act under 5 U.S.C. § 702 and § 706. The Act is clear and that the actions, of Defendants, has obstructed the administration of justice.

## VI. VERIFICATION

6,1 Complainants, Daniel Gabino Martinez, Ramona Hage Morrison and Dalton Warren Wilson, brings this criminal complaint in good faith, and believes in full that the allegations of lawlessness on the part of Defendants above named are true and correct, and that they constitute the crimes alleged herein.

6.2 I, Daniel Gabino Martinez, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of my knowledge. Executed this 1st day of May , 2014.

Daniel Gabino Martinez

6.3 The above affirmation was subscribed and duly sworn to me this 1st day of May 2014, by Daniel Gabino Martinez.

6.4 I, BETSY BROWN, am a Notary under the license from the State of Nevada whose Commission expires 10/11/17, and be it known by my hand and my Seal as follows:

Betsy Brown
Notary signature

BETSY BROWN
Notary Public, State of Nevada
Appointment No. 10-1016-1
My Appt. Expires Oct 11, 2017

Dated: 5/1/14

6.5. I, Ramona Hage Morrison, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of my knowledge. Executed this 7 day of May, 2014.

Ramona Hage Morrison
Ramona Hage Morrison

6.6 The above affirmation was subscribed and duly sworn to me this, ___ day of May 2014, by Ramona Hage Morrison.

6.7 I, GEORGE F. MAGER JR, am a Notary under the license from the State of Nevada whose Commission expires 5.14.17, and be it known by my hand and my Seal as follows:

Notary signature

GEORGE F. MAGER JR.
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 01-68902-2 - Expires May 14, 2017

Dated: MAY 7, 2014

6.8 I, Dalton Warren Wilson, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of my knowledge. Executed this 5th day of May, 2014.

Dalton Warren Wilson

6.9 The above affirmation was subscribed and duly sworn to me this, 5th day of May 2014, by Dalton Warren Wilson.

6.10 I, Kim Bozarth, am a Notary under the license from the State of Nevada whose Commission expires 6-19-17, and be it known by my hand and my Seal as follows:

KIM BOZARTH
Notary Public State of Nevada
No. 13-11277-14
My Appt. Exp. June 19, 2017

Notary signature

Dated: May 5, 2014

Dated: ______________________

Respectfully submitted:

Daniel Gabino Martinez
8116 Mountain Forest Court
Las Vegas, Nevada 89129

**EXHIBIT "TWO"**

**March 27, 2014 letter and March 19, 2014 letter from BLM**



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Nevada*

*Daniel G. Bogden*
*United States Attorney*

*100 West Liberty Street*
*Suite 600*
*Reno, Nevada 89501*

*Phone (775) 784-5438*
*Fax (775) 784-5181*

March 27, 2014

Mr. Daniel Gabino Martinez
8116 Mountain Forest Court
Las Vegas, NV 89129

Re: <u>Martinez, et al. v. USA</u>
3:13-cv-554-MMD-VPC

Dear Mr. Martinez:

This letter follows the conclusion of the Case Management Conference this morning before U.S. Magistrate Judge Valerie P. Cooke. As agreed, I enclose herewith the March 19, 2014, certified mail letter from BLM to Martinez, Wilson, and Morrison. This letter reflects the certified mail number as you requested. This letter was a re-sending of the identical letter on March 14, a copy of which was attached to the United States' case management report (#26) in this case (the March 14 mailing was returned undeliverable). I also enclose the three BLM forms which are referenced in the March 19 (and March 14) letter.

I would strongly urge that any correspondence you send to BLM regarding your grazing application accurately reflect the current address(es) for you and your co-applicants.

I will anticipate hearing from you by April 28 regarding your intentions regarding this litigation. My views regarding the appropriate course are summarized in the case management report.

Sincerely,

DANIEL BOGDEN
United States Attorney

GREG ADDINGTON
Assistant United States Attorney

Encl.



United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Sierra Front Field Office
5665 Morgan Mill Rd
Carson City, NV 89701
http://www.blm.gov/nv

U.S. ATTORNEY, Reno, Nev.
MAR 20 2014
RECEIVED

In Reply Refer To:
4110 (NVC02000)

MAR 19 2014

CERTIFIED MAIL # 7013 0600 0001 1527 0425
RETURN RECEIPT REQUESTED

Mr. Daniel Martinez
Mr. Dalton W. Wilson
Ms. Ramona J. Morrison
5245 Vista Drive, #324
Sparks, NV 89436

Dear Sirs and Madam:

On April 29, 2013, the Sierra Front Field Office received your application for the grazing preference and a permit to graze livestock on the Bureau of Land Management's (BLM) Horse Springs Allotment. After reviewing your application, BLM determined that the application does not comply with federal regulations and that there are a number of deficiencies with the application as described in this letter.

Please be advised that your application was submitted on obsolete and invalid versions of the BLM forms required to make such application and that your application was incomplete. For your convenience, I have enclosed the currently valid versions of the forms that must be completed by grazing preference applicants. The BLM needs the information requested by these forms in order to determine the applicant's qualifications for grazing preference:

- BLM Form 4130-1a – *Grazing Preference Application and Preference Transfer Application (Base Property Preference Attachment and Assignment)*
- BLM Form 4130-1b – *Grazing Application – Supplemental Information*
- BLM Form 4130-1 – *Grazing Schedule – Grazing Application*

The current versions of the forms have been in effect since 2006 and 2007. You may also download copies of these forms from the following World Wide Web address: http://www.blm.gov/noc/st/en/business/eForms/4000-4999.html. Form instructions are included on the forms themselves. A completed application will consist of the above forms that are fully filled out and signed and dated by the involved parties, submitted along with other materials that are described below. All forms must be completed in full. An applicant may mark form entries

that they believe do not apply to their application with "N/A" to indicate that they are not applicable.

Additionally, to complete your application, you must also provide evidence (such as a deed, or a lease) that demonstrates that either: (a) you own or control the base property to which the preference for grazing use in the Horse Springs allotment is currently attached; or, (b) you have obtained the written consent of the current base property owner(s) and any person or entity holding an encumbrance of the base property from which the transfer of preference is to be made, to transfer that preference from their base property, and evidence of your ownership or control of the property to which you wish the preference to be transferred. For your information, the base property to which preference for BLM grazing privileges in the Horse Springs Allotment is currently attached consists of privately owned land described as follows:

Mount Diablo Meridian: Township 20 North, Range 24 East
Section 9: Lot 1
Section 17: E1/2 of NW1/4, SW1/4 of NW1/4, SW1/4 and E1/2

The Quitclaim Deed attached to your application does not evidence ownership or other control of the base property.

Applications for grazing preference must evidence assignment of interest and obligation in range improvements authorized on public lands and maintained in conjunction with the preference. The BLM uses BLM Form 4120-8 *Assignment of Range Improvements* for this purpose. Following our receipt of the materials described above, the BLM will provide you a copy of this form if we determine that it is needed in order to enable you to complete your application.

The mandatory terms and conditions of permitted use on the Horse Springs allotment currently are:

| Allotment Name | Number of Livestock | Kind of Livestock | Period of Use (Month/Day) | Percent Public Land | Animal Unit Months |
|---|---|---|---|---|---|
| Horse Springs | 185 | Cattle | 11/1 to 3/31 | 65 | 601 |

All forage available for livestock permitted use in the Horse Springs allotment is currently attached to the base property listed above.
Be advised also that the BLM requires that an applicant for preference remit a $10.00 service charge to process their application and that we will not process a grazing preference application without advance payment of the service charge.

After receipt of a completed preference application, the BLM may require preference applicants to submit additional relevant information as needed to determine whether they meet all the regulatory qualifications for grazing use on the public lands.

Finally, the regulations that govern the administration of livestock grazing on public lands, including the determination of qualifications for grazing use and the disposition of grazing preference and base property may be found in Title 43 Code of Federal Regulations Part 4100 (2005), particularly subparts 4110.1, 4110.2-1, 4110.2-2 and 4110.2-3.

If you have any questions regarding the enclosed forms, any of the steps involved in applying for grazing preference and a grazing permit, or the BLM's processing of an application for the same, please do not hesitate to contact Ryan Leary at (775) 885-6136.

Leon Thomas
Field Manager
Sierra Front Field Office

Enclosures:
Form 4130-1a
Form 4130-1b
Form 4130-1

cc: Gregory Addington, Assistant U.S. Attorney

Form 4130-1
(February 2012)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

# GRAZING SCHEDULE
## GRAZING APPLICATION

FORM APPROVED
OMB NO. 1004-0041
Expires: August 31, 2014

FOR BLM USE ONLY

State

Office

Authorization No.

Schedule No.

Billing Code

Special Bill Code

Name *(last, first, middle initial)*

Address *(include street, city, State, and zip code)*

I hereby apply for the following grazing use on the public lands and/or other lands administered by the Bureau of Land Management (BLM).

| (1) | | (2) | (3) | (4) | (5) | | (6) | (7) | (8) |
|---|---|---|---|---|---|---|---|---|---|
| ALLOTMENT | | PASTURE | LIVESTOCK | | PERIOD | | % PL USE | TYPE USE | AUM'S |
| NAME | NO. | NO. | NUMBER | KIND | BEGIN | END | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Show your recorded brands, earmarks, and wattles

Show reason for nonuse, if requested: ☐ conservation and protection of the public lands; ☐ annual fluctuation of livestock operations; ☐ financial or other reasons beyond control of the operator; or ☐ livestock disease or quarantine.

Signature | Date

Reason for nonuse: ☐ Approved ☐ Disapproved *(Decision Required)* | Signature of BLM | Date

Title 18 U.S.C. Section 1001, makes it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

(See terms and conditions on page 2)

Form 4130-1a
(February 2012)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

FORM APPROVED
OMB NO. 1004-0041
Expires: August 31, 2014

# GRAZING PREFERENCE APPLICATION AND PREFERENCE TRANSFER APPLICATION

***(Base Property Preference Attachment and Assignment)***

FOR BLM USE ONLY

State: ______

Office: ______

Applicant Authorization Number: ______

Date Filed: ______

**NOTICE: Payment to BLM for transfer processing service charge (see 43 CFR 4130.8-3) must accompany this application. You are encouraged to contact the BLM office that administers the subject grazing preference before you acquire base property and/or apply for grazing preference. All required forms that are needed to apply for grazing preference, to transfer grazing preference, and for a BLM grazing permit or lease are available at your local BLM office.** FORM INSTRUCTIONS: (1) To apply for preference already attached to base property that you (transferee) recently purchased, leased or otherwise acquired legal control, and the corresponding BLM grazing permit/lease, complete page 1 of this form, BLM Form 4130-1 (Grazing Schedule – Grazing Application), and BLM Form 4130-1b (Grazing Application–Supplemental Information), and submit these forms to BLM with all documents that BLM requires to support or verify the information stated on the application forms. (2) To apply to transfer preference from base property to other property (regardless of whether the other property already is base property for a BLM grazing preference) and for a corresponding permit or lease, the transferee completes the requirements described in (1), above, and the owner or controller of the base property from which the preference is to be transferred (transferor) completes page 2 of this form. Applicants must obtain all other needed signatures as applicable (e.g. lien-holder consent) to complete the application. Upon receipt of an application for preference or an application to transfer preference, BLM will provide the parties to the transfer with an *Assignment of Range Improvements* (BLM Form 4120-8) for their completion as applicable.

## PREFERENCE APPLICANT (TRANSFEREE) INFORMATION

| Name: | Mailing Address: |
|---|---|

## REQUESTED PREFERENCE ATTACHMENT TO BASE PROPERTY

**I offer the ☐ land ☐ water described below to meet the mandatory base property qualification in support of my application for grazing use on public lands. I request that BLM confirm the current attachment of, or request that BLM attach, grazing preference to this property as shown below and assign said preference to me for grazing use on public lands based on my ownership or control of this property.** I certify that this property is described correctly and that it meets the requirements of the grazing regulations (43 CFR 4110.2-1(a) or (b), as applicable). *You must submit a copy of documentation that you own or control this property (e.g. deed, lease) with this form. If needed, attach clearly labeled additional sheets.*

| **Offered Base Property** Land (or Water) Property Name and Legal Description (If water base, also describe type of water (e.g. well, spring) and list State Permit / Certificate Numbers) | **Number of Base Property Acres by Status** (Or Number of Livestock Served by Water Type) | | **Grazing Preference Attached or Requested to be Attached to Offered Base Property (Under 43 CFR 4110.2-2(c))** For Grazing Use In: Allotment Number and Name | | **Forage Amount (AUM's) and Use Status** | |
|---|---|---|---|---|---|---|
| | Owned (Full) | Controlled (Part/Avaiability*) | | | Active | Suspended |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| **Preference Applicant (Transferee) Signature:** | **Date:** |
|---|---|

*NOTE: If part-time water, indicate period of year that it is available for livestock use.

Title 18 U.S.C. Section 1001 and Title 43 U.S.C. Section 1212, make it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

IMPORTANT INFORMATION: Upon BLM approval of this application, BLM will update its records to reflect the change in preference holders and/or attachments of preference to base property. BLM will act upon the application for the grazing permit or lease concurrently through a separate process which will include a review and possible change to the terms and conditions of grazing use from that authorized to the previous preference holder. On a regional basis, BLM land use plans identify those public lands that are available for grazing use under a permit or lease. The terms and conditions of such permits and leases are periodically changed in response to management needs or circumstances.

(Contined on page 2)

Form 4130-1b
(February 2012)

FORM APPROVED
OMB NO. 1004-0041
Expires: August 31, 2014

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

# GRAZING APPLICATION SUPPLEMENTAL INFORMATION

FOR BLM USE ONLY

State: ____________________

Office: ____________________

Auth. Number: ____________________

Date Filed:

INSTRUCTIONS: An applicant for a permit/lease that is based on preference should complete this form and submit to the Bureau of Land Management (BLM) along with completed forms 4130-1a (Grazing Preference Application and Preference Transfer Application) and 4130-1 (Grazing Schedule - Grazing Application). Form 4120-8 (Assignment of Range Improvements) is used to accept assignment of interest and responsibility for maintenance of range improvements used in conjunction with the subject preference. Form 4120-8 can be obtained only from your local BLM Office. **Current permittees or lessees** can use Form 4130-1b to update/supersede previously submitted information. BLM retains original in case record and returns a copy to the permittee/lessee.

**APPLICANT NAME:**

**MAILING ADDRESS:**

## 1. APPLICANT ADDITIONAL QUALIFICATIONS STATEMENT

*Complete when submitting application for a new grazing permit/lease.*

**This section documents whether you meet requirements, besides owning or controlling base property, to qualify for grazing use on public lands.**

a. The applicant is a (check only one):

i. ☐ United States citizen, (or, has properly filed a valid declaration of intention to become a citizen or a valid petition for naturalization); or,

ii. ☐ Group or association authorized to conduct business in the State in which the grazing use is sought, all members of which are qualified under "a(i)"; or,

iii. ☐ A corporation authorized to conduct business in the State in which the grazing use is sought.
For group or association, or corporation, indicate the State(s) where it is a registered business entity: ____________________

b. Answer the following:

Has the applicant or any affiliate had any Federal grazing permit or lease cancelled for violation of the permit or lease within 36 months immediately preceding the date of this application? *(See 43 CFR 4100.0-5 for definition of "affiliate.")* ☐ Yes ☐ No

Has the applicant or any affiliate had any State grazing permit or lease, for lands within allotments for which a Federal grazing permit or lease is sought, cancelled for violation of the permit or lease within 36 months immediately preceding the date of this application? ☐ Yes ☐ No

Is the applicant or any affiliate barred from holding a Federal grazing permit or lease by a court of competent jurisdiction? ☐ Yes ☐ No

*BLM requires that you submit all relevant information we request in order to determine that you meet all qualifications, such as documentation of incorporation or of group/business association, including information regarding business organization and ownership.*

## 2. OWNERSHIP AND CONTROL OF LIVESTOCK

*Complete with application for new permit/lease or to update information regarding an existing permit/lease. If under 43 CFR 4130.7 et seq., a livestock control agreement is required, failure to file it may result in civil and/or criminal regulatory enforcement actions.*

a. The livestock to be grazed under the grazing permit/lease requested by this application (or under my existing permit/lease) are or will be owned by (check all that apply):

☐ applicant (or permittee/lessee);
☐ other party (except for sons and daughters of applicant or permittee/lessee). ***(If checked, you must complete part 2(b).)***
☐ sons and/or daughters of applicant (or of permittee/lessee); ***(If checked, please answer the next two questions.)***

i. Are the sons/daughters participating in educational or youth programs related to animal husbandry, agribusiness or rangeland management, or are they actively involved in the family ranching operation and are establishing a livestock herd with the intent of assuming part or all of the family ranching operation? ☐ Yes ☐ No

ii. Will the livestock owned by the sons/daughters comprise 50 percent or less of the total number of livestock authorized to occupy public lands under the permit/lease requested by this application (or under your existing permit/lease)? ☐ Yes ☐ No

***If you answered no to either or both of the immediately preceding questions, you must complete part 2(b).***

b. Based on the information you provided in part 2(a), you are required to file with BLM the agreement that gives you (the applicant or permittee/lessee) control of the livestock that you do not own that will graze under your permit or lease. This agreement must list the kind and number of livestock subject to the agreement, state who owns them, contain the terms for their care and management, specify the duration of the agreement and be signed by the parties to the agreement. BLM must approve the agreement prior to any grazing use. You must also file with BLM the brands and other identifying marks of the livestock subject to the agreement. (See 43 CFR 4130.7 (d), (e) and (f).)

This agreement is (check one): ☐ attached ☐ is not attached but will be submitted to BLM by (date): ____________________.

(Continued on page 2)

## 5. OTHER FEDERAL, STATE AND LOCAL AGENCY GRAZING AUTHORIZATIONS

*Complete with application for new permit/lease or to update information regarding an existing permit/lease.*

Does the applicant (or permittee/lessee) have a grazing permit, lease or other authorization to graze on land administered by a State or county agency, or another Federal agency? ☐ **YES** (If yes, provide the information below. If necessary, attach additional sheets.) ☐ **NO**

| AGENCY NAME | GRAZING AREA or ALLOTMENT NAME | LIVESTOCK NUMBER / KIND | PERIOD OF USE | | FORAGE AMOUNT (AUM's) |
|---|---|---|---|---|---|
| | | | BEGIN DATE | END DATE | |
| | | | | | |
| | | | | | |
| | | | | | |

## 6. DESIGNATION OF AUTHORIZED REPRESENTATIVE

***Optional**: For applicant (or permittee/lessee) to designate a representative of their choosing to conduct business with BLM. If designating an authorized representative, submit with application for new permit/lease or to update information regarding an existing permit/lease.*

BLM is herein advised that until further written notice, the undersigned applicant or permittee/lessee has authorized the following person to conduct business and otherwise represent the applicant or permittee/lessee in all matters relating to grazing use on public lands within the jurisdiction of the ________________________ BLM Office.

AUTHORIZED REPRESENTATIVE INFORMATION:

(Printed Name and Title - as applicable)

(Authorized Representative Signature)

Correspondence Mailing Address:

Email Address:

Telephone Number(s) [e.g. Day, Night, Mobile]:

***[Upon the designation of a representative and the issuance of a grazing permit or lease, grazing fee billings, official correspondence and other documents such as grazing decisions or other notices will be sent to the authorized representative acting on behalf of the permittee or lessee. An authorized representative may not apply to transfer grazing preference on a permittee/lessee's behalf.** An applicant or a permittee/lessee may change or cancel this designation at any time by submitting the change in writing to the BLM.]*

## 7. APPLICANT (or PERMITTEE/LESSEE) SIGNATURE AND DATE

I will promptly notify BLM in writing of any changed circumstances that affect the accuracy or completeness of the information recorded on this form.

(Signature of Applicant or Permittee/Lessee) (Date)

(Printed Name) (Organizational Title - If applicant or Permittee/Lessee is a Corporation or Group)

Title 18 U.S.C. Section 1001 makes it a crime for any person knowingly and willfully to make any department or agency of the United States any false, fictitious or fraudulent statements of representations as to any matter within its jurisdiction.

NOTICES

**The Privacy Act** and 43 CFR 2.48(d) require that you be furnished with the following information in connection with information requested by this form.

**AUTHORITY:** 43 U.S.C. 315, 316, and 1181d; 43 CFR 4100.

**PRINCIPAL PURPOSE:** The information is used to adjudicate applicant's preference for public land or resources.

**ROUTINE USES:** In accordance with the Bureau of Land Management's (BLM) System of Records Notice published in the Federal Register on December 29, 2010 [Bureau of Land Management's Range Management System—Interior, LLM-2; Notice To Amend an Existing System of Records; Privacy Act of 1974; as Amended], names and addresses provided by the applicant on this form will be publically available in reports on the BLM public website.

**EFFECT OF NOT PROVIDING INFORMATION:** Submission of the requested information is necessary to obtain or retain a benefit. Failure to submit all of the requested information or to complete this form may result in delay or the rejection and/or denial of your application.

**The Paperwork Reduction Act** requires us to inform you that BLM collects this information to establish preference for grazing use on public lands. You do not have to respond to this or any other Federal agency-sponsored information collection unless it displays a currently valid OMB control number.

**BURDEN HOURS STATEMENT:** Public reporting burden for this form is estimated to average 30 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. You may submit comments regarding the burden estimate or any other aspect of this form to: U.S. Department of the Interior, Bureau of Land Management (1004-0041), Bureau Information Collection Clearance Officer (WO-630), 1849 C Street, N.W., Room 2134LM, Washington, D.C. 20240.

**U.S. Department of Justice**
United States Attorney
*District of Nevada*
*100 W. Liberty, Suite 600*
*Reno, Nevada 89501*

Official Business
Penalty for Private Use $300

3/29/2014

Mr. Daniel Gabino Martinez
8116 Mountain Forest Court
Las Vegas, NV 89129

89129$1836 C070