# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:07-cv-01154-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| WAYNE N. HAGE, Executor of the ESTATE ) | |
| OF E. WAYNE HAGE, and WAYNE N. ) | |
| HAGE, Individually, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The United States Court of Appeals for the Ninth Circuit instructed this Court on remand to reconsider the government's trespass claims "under the correct legal standard." *United States v. Estate of Hage*, 810 F.3d 712, 721 (9th Cir. 2016), *cert. denied*, No. 15-1295 (U.S. Oct. 17, 2016). The Ninth Circuit further directed this Court on remand to "enter judgment for the government on all claims supported by the record . . . calculate appropriate damages, and . . . enter appropriate injunctive relief." *Id.*

Upon remand, the Court requested that the parties file briefing on three issues:

1. Whether the source of law—state or federal law—has any effect on the calculation of damages;
2. If so, whether state law or federal law governs the calculation of damages; and
3. The appropriate method to calculate damages owed to Plaintiff.

(Order on Mandate, ECF No. 452).

The parties filed their briefs in response to the Court's questions on May 31, 2016, (ECF Nos. 467, 468), and on June 2, 2016, (ECF No. 470). On June 23, 2016, the Court held a status conference at the Lloyd D. George U.S. Courthouse, Las Vegas, during which additional issues

identified by the Court were addressed by counsel for the parties and by defendant, Wayne N. Hage, appearing *pro se*. Additionally, the Court reviewed the record in this case, including the transcripts and exhibits entered during a twenty-one-day trial held in 2012, and makes the following findings of fact, conclusions of law, and orders that judgment be entered in favor of the United States.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Mexico ceded the lands within the State of Nevada to the United States under the Treaty of Guadalupe-Hidalgo in 1848, 9 Stat. 922 (1848). Tr. 97: 15-101:13; Ex. 568; Ex. 577; *see also United States v. California*, 436 U.S. 32, 34 n.3 (1978); *United States v. Gardner*, 107 F.3d 1314, 1317 (9th Cir. 1997); *United States v. Nye Cty, Nev.*, 920 F. Supp. 1108, 1110 (D. Nev. 1996).

2. There were no preexisting property owners in Nevada whose interests were recognized under the Treaty of Guadalupe-Hidalgo in 1848, 9 Stat. 922 (1848). Tr. 101:7-13, 102:15-104:18; Ex. 570.

3. The lands at issue in this case are "federal lands" located in Nye County, Nevada and such lands total approximately 707,613 acres. Tr. 111:13-125:23 (since 1848 the lands at issue have been federally owned except for patented in-holdings).

4. The Forest Service and Bureau of Land Management ("BLM") are the federal agencies that manage and administer the federal lands at issue in this case. These lands include the Meadow Canyon Cattle & Horse Allotment, the Table Mountain Cattle & Horse Allotment, the Monitor Valley East Allotment, and the Monitor Valley West Allotment on the Humboldt-Toiyabe National Forest ("Forest Service grazing allotments"), and the Ralston Grazing Allotment and the Monitor Grazing Allotment ("BLM grazing allotments").

5. Prior to the creation of the federal permitting systems for use of the federal lands at issue in this case, the United States simply acquiesced in the use of these federal lands for

grazing. *See Hage*, 810 F.3d at 716–17 ("Congress has not conferred upon citizens the right to graze stock upon the public lands. The Government has merely suffered the lands to be so used." (quoting *Omaechevarria v. Idaho*, 246 U.S. 343, 352 (1918) (internal quotation marks omitted) (citing *Light v. United States*, 220 U.S. 523, 535 (1911))).

6.  The federal lands suffered from overgrazing, and conflicts regarding grazing on the federal lands were common in the late nineteenth century. *See* Tr. 1205:1-25, 1210:10–22, Tr. 184, Ex. 564; *see also Pub. Lands Council v. Babbitt*, 529 U.S. 728, 732 (2000).

7.  Congress responded in the late nineteenth century to the overgrazing and hostilities that were escalating between competing users of the federal western lands by enacting laws to protect such lands from degradation and to regulate uses of those lands, including livestock grazing. *See* Tr. 549:13-25, 1248:11-16; *see also Pub. Lands Council*, 529 U.S. at 733. Congress directed the Secretaries of Agriculture (Forest Service) and Interior (BLM) to manage livestock grazing on federal lands, including the grazing allotments at issue in this case. *See* Organic Admin. Act of 1897, 30 Stat. 34, 16 U.S.C. § 473; Taylor Grazing Act of 1934, 43 U.S.C. §§ 315–315r; Granger-Thye Act of 1950, 64 Stat. 82, 88, 16 U.S.C. § 572; National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1687; Federal Land Policy and Management Act of 1976 ("FLPMA"), 90 Stat. 2743, 43 U.S.C. § 1752(a). "The Taylor Grazing Act authorized the Secretary of the Interior 'to issue or cause to be issued permits to graze livestock' pursuant to 'his rules and regulations.'" *Hage*, 810 F.3d at 717 (quoting 43 U.S.C. § 315b). "In 1950, Congress granted the same authority to the Secretary of Agriculture with respect to national forests." *Id.* (quoting 16 U.S.C. § 580l); s*ee also United States v. Grimaud*, 220 U.S. 506, 521 (1911) ("[T]he implied license under which the United States has suffered its public domain to be used as a pasture for sheep and cattle . . . was curtailed and qualified by Congress, to the extent that such privilege should not be exercised in contravention

of the rules and regulations" (citations omitted)); *see also Light v. United States*, 220 U.S. 523 (1911).

8. The federal lands managed by the Forest Service in Monitor Valley area became subject to federal permit requirements upon inclusion in the National Forest System in 1907. *See* Tr. 547:7–25, 552:17–25.

9. The federal lands managed by the BLM in the Battle Mountain District became subject to federal permit requirements after the Taylor Grazing Act was enacted in 1934 and with the creation of Nevada Grazing District No. 6 in 1951. *See* Tr. 1248:11–16.

10. Following promulgation of grazing regulations, the United States has required ranchers or owners of livestock to obtain grazing permits from the United States to graze livestock on these federal lands. *See* Tr. 549:13–25, 568:4–569:1.

11. No individuals have a right to graze livestock on the federal land at issue without authorization from the United States. Tr. 595:14–17, 1230:17–20.  Any and all rights on federal property must be expressly granted by Congress and the law of the United States exclusively governs the disposition of federal property, and interests therein, under the United States Constitution, Article IV. *See Utah Power & Light Co. v. United States*, 243 U.S. 389, 404 (1917).

12. It was customary in Nevada for users of federal lands to comply with the regulations and obtain grazing permits when required to do so. *See, e.g.*, Tr. 2966:20–2968:1.

13. For both the National Forest System lands and the public lands administered by the BLM, the first permits were issued according to a system that gave priority to those who held private property interests in proximity to the federal lands and who had previously grazed the federal lands. *See* Tr. 546:1–550:9, 664:17–669:9; *see also* Ex. 1163 at Bates No. US021122 ("Stock of all kinds will receive preference in the following order . . . "); Ex. 596 at

1  Bates No. US016200 (Regulation 11, USDA, U.S. Forest Service, *Use of the National Forest*

2  *Reserves*, 1905); Ex. 1217; Ex. 607 at Bates No. US016526.

3        14.     Prior owners of the Pine Creek Ranch who sold the Ranch to the Hage family in

4  1978, held federal grazing permits for the lands at issue in this case and also were authorized to

5  place or construct range improvements such as fences and pipelines on these federal lands. Tr.

6  3431:22–24; Exs. 56, 75, 76, 666.

7        15.     Until the mid-1990s, E. Wayne Hage and his wife Jean N. Hage held federal

8  grazing permits for the lands at issue and, like their predecessors, were authorized to place or

9  construct certain range improvements. Those permits were either cancelled or expired on their

10 own terms, and were not renewed. Tr. 902:12–904:2, 957:16–24, 1665; Exs. 351, 576; *see also*

11 *Hage*, 810 F.3d. at 715.

12       16.     Defendant Estate of E. Wayne Hage has never held any grazing permits or other

13 federal authorization for livestock grazing, nor authorization for range improvements, on the

14 federal lands at issue in this case. Tr. 902:12–904:2, 957:16–24, 1665; Exs. 351, 576.

15       17.     Defendant Wayne N. Hage has never held any grazing permits or other federal

16 authorization for livestock grazing, nor authorization for range improvements, on the federal

17 lands at issue in this case. Tr. 3271:4–12; *see also Hage*, 810 F.3d. at 715.

18       18.     Despite his lack of authorization to do so, Defendant Wayne N. Hage has placed

19 livestock on the federal grazing allotments at issue in this case since at least 2004. *See* ¶¶ 19–28

20 *infra*; *see also Hage*, 810 F.3d. at 718.

21       19.     Employees of the Forest Service observed and documented cattle bearing brands

22 registered in Nevada to Defendants grazing on the Meadow Canyon Allotment from at least

23 2004 through 2011 although neither Defendant held a permit authorizing that use. Tr. 811:8–

24 815:18, 816:13–823:24, 827:23–831:7, 834:11–849:5, 972:17–973:6, 1066:17–24, 1281:8-

25 1285:19, 1285:20–1326:21, 1375:4–1382:18–1407:25, 1429:4–1432:3, 1432:4–1443:21; Exs.

22, 23A, 109, 110, 112–14, 116, 353-55, 368-373, 681, 874, 1242, 1243, 1244. 20. Employees of the BLM observed and documented cattle bearing brands registered in Nevada to Defendants grazing on the Ralston and Monitor Allotments from at least 2004 through 2011, although neither Defendant held a permit authorizing that use. Tr. 1478:17–1479:5, 1575:14–1576:9, 1586:8–13; Exs. 19, 21, 23A, 24, 26-28, 101, 103, 104, 105, 107, 108, 155, 163A, 164A, 164B, 164C, 241, 296, 313, 392A, 398, 407, 413, 419, 422, 479A, 483A, 497, 498, 500, 501, 503, 504, 505, 506, 507, 511A, 512, 513, 703, 707, 894, 902, 1248.

21.     Employees of the Forest Service and the BLM have observed and documented ongoing grazing on federal lands by livestock bearing brands registered to the Defendants through trial. Tr. 1066:17–1067:9, 1575:14–1576:9, 1586:8-13.  That unauthorized grazing is continuing. *See* Decl. of Daltrey J. Balmer, filed April 19, 2016 (ECF No. 454-1).

22.     Defendant Wayne N. Hage admitted that from 2004 to the time of trial he placed cattle on federal grazing allotments. Tr. 2073:4–8.  These unauthorized cattle, including cattle belonging to other ranchers, were under Defendant Wayne N. Hage's control. *See* Tr. 2122:7–10; *see also id.* at 2131:9–2133:22; *id.* at 2136:2–24.  Defendant Wayne N. Hage also admitted that he has placed "[p]robably 600" cattle on the Monitor Valley Allotment at any one time since 2004. Tr. 3571:16–21.

23.     Defendant Wayne N. Hage owned the following number of cattle during each year (the time period of each fiscal year ("FY") is July 1 through June 30): 74 cattle in FY 2004–2005; 14 cattle in FY 2005–2006; 173 cattle in FY 2006–2007; 208 cattle in FY 2007–2008; 489 cattle in FY 2008–2009; 568 cattle in FY 2009–2010; and 648 cattle in FY 2010–2011. *See* Tr. 2111:23–2119:15.

24.     Defendant Wayne N. Hage was responsible for placing cattle on federal lands without authorization. *See* Tr. 2073:4–8 (Mr. Hage admitting that from 2004 to the time of trial that he placed, herded or had driven cattle onto the federal grazing allotments).

25. Specifically, defendant Wayne N. Hage placed his cattle along with cattle owned by others on federally-owned lands for approximately nine months during the year. *See* Tr. 1887:9–1922:25 (Mr. Plank testifying regarding the annual placement and rotation of cattle on federal lands and marking those locations on Ex. 2A); *see also id.* at 2086:12–2097:10 (Mr. Hage confirming Mr. Plank's description of the annual placement and rotation of cattle on federal lands and marking Ex. 2B to identify the area where he placed cattle; *id.* at 2020:8–2023:3 (Mr. Raymond Kretschmer testifying that he helped Mr. Hage move cattle on federal lands in the rotational pattern described by Mr. Plank). For at least seven months each year Mr. Hage was responsible for placing cattle on BLM-administered lands and for at least two months each year he placed cattle on National Forest System Lands. *See* Tr. 1887:9–1922:25; *see also id.* at 2086:20–2097:10; *id.* at 2020:8–2023:3; Exs. 2A & 2B.

26. The testimony cited in paragraph 25 is also supported by independent observations by Forest Service and BLM personnel who, during trial, identified on maps the locations on federal lands at which cattle bearing the Defendants' brands were observed without authorization. *See* Exs. 19, 21, 22, 23A, 24, 26, 27, 28.

27. Since 2004, the Forest Service and BLM sent letters, trespass notices and bills to Defendants requesting that their unauthorized livestock be removed from the federal lands at issue in this case. *See* Tr. 992:17–993:13 (District Ranger Williams testifying that the sent letters to both Defendants requesting that they remove their unauthorized cattle from Forest System lands); *see also id.* at 1692:12–19 (BLM's Mr. Seley testifying about trespass notices sent to both Defendants in 2007); *see also, e.g.*, Exs. 147, 166, 170, 171, 340, 356, 357, 476, 518.

28. Despite these trespass notices and requests for removal, Mr. Hage did not remove his livestock from the federal lands, and he continues to place livestock on these federal lands. *See* Tr. 2073:4–8; *see also* ¶ 21, above.

29. Anyone who enters or uses federal land without authorization is in violation of federal statutes and regulations, and is a trespasser. *See Jones v. United States*, 195 F.2d 707, 709 (9th Cir. 1952); *United States v. Gardner*, 903 F. Supp. 1394, 1398–1403 (D. Nev. 1995) (assessing an unauthorized grazing use fee under 36 C.F.R. § 222.50(h) for grazing cattle without authorization), *aff'd*, 107 F.3d 1314 (9th Cir. 1997); *Camfield v. United States*, 167 U.S. 518, 524 (1897); 16 U.S.C. § 551; 36 C.F.R. §§ 222.3(a) & 261.7(a)–(b), and 43 C.F.R. § 4140.1(b)(1)(i); *see also Grimaud*, 220 U.S. at 521.

30. Fees must be paid for grazing livestock on federal land. *See* 43 U.S.C. §§ 315b & 1751; *see also* 36 C.F.R. § 222.50(a). And the failure to pay the requisite fees also constitutes unauthorized use. *See* 43 C.F.R. § 4140.1.

31. Ownership of state-based stockwater rights located on federal land does not confer the right to place livestock on federal land or to use forage without a permit, nor does it create an exception to the prohibition against placing or allowing livestock on federal land without authorization. *See Hage*, 810 F.3d at 717–18; *Hunter v. United States*, 388 F.2d 148, 154 (9th Cir. 1967) (holder of stockwater rights does not have right to the adjacent forage); *Estate of Hage v. United States*, 687 F.3d 1281, 1289–90 (Fed. Cir. 2012) (stockwater right does not include an attendant right to graze (citing *Colvin Cattle Co. v. United States*, 468 F.3d 803, 808 (Fed. Cir. 2006))).

32. Through the Act of July 26, 1866, R.S. 2339, 43 U.S.C. § 661 ("1866 Mining Act") (repealed by FLPMA, Pub. L. No. 94-579, tit. VII, § 706, 90 Stat. 2743), Congress recognized and acknowledged certain limited rights based upon local customs, laws, and the decisions of courts, such as water rights and rights-of-way over federal lands for the construction of ditches and canals. However, Congress explicitly chose not to grant rights for livestock grazing or the use of forage on federal land. *See* 1866 Mining Act, 43 U.S.C. § 661; *Hunter*, 388 F.2d at 154; *see also* Taylor Grazing Act, 43 U.S.C. §§ 315, 315b; *Diamond Bar*

*Cattle Co. v. United States*, 168 F.3d 1209, 1215 (10th Cir. 1999).  Instead, Congress retained those rights in the United States, and enacted the laws providing for the controlled use of federal land for livestock grazing through permit systems managed by the BLM and the Forest Service. 16 U.S.C. § 473–75; 43 U.S.C. §§ 315–315r; 16 U.S.C. § 572; 16 U.S.C. §§ 1600–87; 43 U.S.C. § 1752(a).

33.     Past custom and use does not confer a right to use federal rangeland. *Gardner v. Stager*, 892 F. Supp. 1301, 1303–04 (D. Nev. 1995), *aff'd*, 103 F.3d 886 (9th Cir.1996).

34.     The United States' authority to regulate livestock grazing on public lands located in Nevada is not subject to, or limited by, Nevada state law. *Ansolabehere v. Laborde*, 310 P.2d 842, 849 (Nev. 1957).

35.     Nevada state law therefore does not authorize Defendants to place livestock on federal lands without federal authorization, nor does state law authorize the holder of a state-based stockwater right, or any other state-based right, to graze livestock on the surrounding federal lands without federal authorization. *Hunter*, 388 F.2d at 154 (holder of stockwater rights does not have rights to the adjacent forage); *Estate of Hage*, 687 F.3d at 1289-90 (stockwater right does not include an attendant right to graze); *Ansolabehere*, 310 P.2d at 842, 849; *see also Cook v. Maremont-Holland Co.*, 344 P.2d 198, 201 (Nev. 1959).

36.     The Estate's ownership of state-based stockwater rights therefore does not include a right to graze livestock on federal lands, nor does it exempt Defendants from the requirement that they be authorized by the federal government to place livestock on federal lands. *Hage*, 810 F.3d at 717–18; *Hunter*, 388 F.2d at 154; *Gardner v. Stager*, 892 F. Supp. at 1303-04; *Estate of Hage*, 687 F.3d at 1289-90 (stockwater right does not include an attendant right to graze); *Walker v. United States*, 79 Fed. Cl. 685, 694-95 (2008); *Walker v. United States*, 162 P.3d 882, 891 (N.M. 2007); *Diamond Bar Cattle*, 168 F.3d at 1212; *Bradshaw v.*

*United States*, 47 Fed. Cl. 549, 553–54 (2000); *Washoe Cty., Nev. v. United States*, 319 F.3d 1320, 1327 (Fed. Cir. 2003); *see also Itcaina v. Marble*, 55 P.2d 625, 629–30 (Nev. 1936).

37. Defendants have no property right on the federal lands at issue in this case that includes a right to graze livestock on those lands, nor exempts Defendants from the requirement that they obtain federal authorization to place livestock on federal lands. *See Hunter*, 388 F.2d at 154.

38. Since at least 2004, Defendant Wayne N. Hage has repeatedly and willfully placed livestock on BLM-administered land and National Forest System lands without authorization, which is a violation of federal law.

39. "Defendants violated applicable federal statutes and regulations, as well as the state law of trespass." *Hage*, 810 F.3d at 718 (citing 43 U.S.C. § 1733(g) ("The use, occupancy, or development of any portion of the public lands contrary to any regulation of the Secretary or other responsible authority . . . is unlawful and prohibited."); 43 C.F.R. § 4140.1(b)(1) (prohibiting persons from "[a]llowing livestock . . . to graze on or be driven across [federal] lands: (i) Without a permit or lease or other grazing use authorization")).

40. Defendant Wayne N. Hage's violations of federal law are interfering with the Forest Service's and BLM's statutory mandates to administer, manage, and protect federal property.

41. There is no easement by necessity to access water rights. *See Hage*, 810 F.3d at 719.

42. The United States is entitled to declaratory and injunctive relief and fees as damages for Defendant Wayne N. Hage's unauthorized use of federal land. *See Gardner*, 903 F. Supp. at 1403 (citing *Light*, 220 U.S. 523); *see also Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981) ("[T]he fact that damages are not susceptible to precise measurement does not preclude recovery . . . the factfinder is allowed to make a

reasonable inference of damages from the facts adduced . . . so long as the damages are not based on speculation or guess." (citations omitted)); *Camfield*, 167 U.S. at 524.

43. A person allowing livestock to graze on BLM-administered lands without a permit or other grazing authorization and timely payment of grazing fees is subject to civil and criminal penalties. *See* 43 C.F.R. § 4140.1(b)(1). These include penalties under three levels – nonwillful, willful, and repeated willful unauthorized grazing. *See* id. § 4150.3 (specifying fees for placing unauthorized livestock on BLM-administered lands); *see also* Ex. 1140 (specifying applicable rates for authorized an unauthorized grazing on BLM-administered lands during each relevant time period).

44. A person allowing livestock to graze on National Forest System lands without a permit or other grazing authorization and timely payment of grazing fees is subject to an unauthorized grazing fee. *See* 36 C.F.R. § 222.50(h). Fees for placing unauthorized livestock on National Forest System lands are specified in Interim Directives issued annually by the Forest Service. *See* Exs. 77, 80, 81, 82, 83 & 84.

## II. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** as follows:

1. The Court's prior Findings of Fact, Conclusions of Law, and Injunction dated May 24, 2013, (ECF No. 415), is hereby, or previously has been, vacated in its entirety;

2. The Judgment entered May 24, 2013, (ECF No. 416), is hereby, or previously has been, vacated in its entirety;

3. The Court finds that federal law, not state law, governs this action;

4. Judgment shall be entered in favor of the United States and against Defendant Wayne N. Hage for grazing livestock on federally-owned public lands administered by the Forest Service and the BLM, without authorization and in violation of federal law.  Defendant

Wayne N. Hage is therefore liable to the United States for his unauthorized grazing of cattle on federal lands in the total amount of $587,294.28, as follows:

      a.     For his willful and repeated willful unauthorized grazing on public lands administered by the BLM, Defendant Wayne N. Hage shall pay to the United States the total sum of $555,040.50, in accordance with the summary chart below:

| Time Period | No. of Cattle | Months on BLM Administered Land | No. of Animal Unit Months (AUMs) | Applicable Rates per AUM | Amount Due |
|---|---|---|---|---|---|
| Nov. 2004–June 2005 | 74 | 7 | 518 | $21.00 | $10,878.00 |
| Nov. 2005–June 2006 | 14 | 7 | 98 | $31.80 | $3,116.40 |
| Nov. 2007–June 2007 | 173 | 7 | 1,211 | $36.60 | $44,322.60 |
| Nov. 2007–June 2008 | 208 | 7 | 1,456 | $39.00 | $56,784.00 |
| Nov. 2008–June 2009 | 489 | 7 | 3,423 | $40.50 | $138,631.50 |
| Nov. 2009–June 2010 | 568 | 7 | 3,976 | $33.00 | $131,208.00 |
| Nov. 2010–June 2011 | 648 | 7 | 4,536 | 37.50 | $170,100.00 |
| Total Due | | | | | $555,040.50 |

      b.     For his unauthorized grazing on National Forest System lands administered by the Forest Service, Defendant Wayne N. Hage shall pay to the United States the total sum of $11,791.34, in accordance with the summary chart below:

| Time Period | No. of Cattle | Months on National Forest System Land | No. of Head Months (HMs) | Applicable Rates per HM | Amount Due |
|---|---|---|---|---|---|
| Aug. 2004–Sept. 2004 | 74 | 7 | 148 | $4.41 | $652.68 |
| Aug. 2005–Sept. 2005 | 14 | 7 | 28 | $4.41 | $123.48 |
| Aug. 2006–Sept. 2006 | 173 | 7 | 346 | $4.83 | $1,671.18 |
| Aug. 2007– | 208 | 7 | 416 | $4.10 | $1,705.60 |

| | | | | | |
|---|---|---|---|---|---|
| Sept. 2007 | | | | | |
| Aug. 2008–Sept. 2008 | 489 | 7 | 978 | $2.24 | $2,190.72 |
| Aug. 2009–Sept. 2009 | 568 | 7 | 1,136 | $2.24 | $2,544.64 |
| Aug. 2010–Sept. 2010 | 648 | 7 | 1,296 | $2.24 | $2,903.04 |
| Total Due | | | | | $11,791.34 |

c. For his unauthorized grazing on federal land within the State of Nevada during the pendency of his appeal to the United States Supreme Court, Defendant Wayne N. Hage shall pay to the United States the total sum of $20,462.44, previously deposited with the Clerk of Court.

5. Defendant is hereby permanently enjoined and restrained as follows:

a. Within thirty days, Defendant Wayne N. Hage, on his own behalf and on behalf of the Estate of E. Wayne Hage, shall permanently remove any and all livestock that he owns or are within his possession or control from all land owned by the United States within the State of Nevada, including but not limited to the United States' land within the Humboldt-Toiyabe National Forest and the public lands administered by the BLM;

b. Within forty-five days, Defendant Wayne N. Hage shall, on his own behalf and on behalf of the Estate of E. Wayne Hage, file a sworn statement under the penalty of perjury (*i.e.*, either an affidavit or declaration) informing the Court of his compliance with paragraph (5)(a) of this Order. Such sworn statement shall specify the number of livestock removed, and the owners of the livestock removed, including a description of such owners' brands. If Defendant Wayne N. Hage does not timely file such a sworn statement or the sworn statement does not demonstrate that he has fully complied with this Order, Defendant Wayne N. Hage shall be ordered to show cause as to why he should not be held in contempt of Court;

c. Defendants are forever enjoined and restrained from placing any livestock that they own, possess or control, or allowing such livestock to enter or to be placed by others,

on the public lands owned by the United States within the State of Nevada and administered by either the BLM or Forest Service without prior written authorization from the United States. Livestock bearing brands registered to E. Wayne Hage, Jean N. Hage, their Estates, or to Wayne N. Hage, are presumptively within Defendants' ownership, possession or control, as are livestock bearing brands registered to others for whom Defendant Wayne N. Hage managed their herd and/or claimed responsibility for their livestock.

6. The Court shall retain jurisdiction to enforce this Order.

The Clerk of Court shall enter judgment accordingly.

**DATED** this __27__ day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge